Richard G. Grotch, Esq. – SBN 127713
Jonathan C. Harriman, Esq. – SBN 250943
**CODDINGTON, HICKS & DANFORTH**
**A Professional Corporation, Lawyers**
555 Twin Dolphin Drive, Suite 300
Redwood City, California  94065-2133
Telephone: (650) 592-5400
Facsimile:   (650) 592-5027
Email: rgrotch@chdlawyers.com

**ATTORNEYS FOR** Defendant
UNITED AIRLINES, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALISA GLEASON, | Case No.    2:13-CV-01064-MCE-DAD |
| Plaintiff, | DEFENDANT UNITED AIRLINES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT |
| vs. | |
| UNITED AIRLINES, INC., | |
| Defendants. | Date:          January 22, 2015 |
| | Time:          2:00 p.m. |
| | Courtroom:   7 – 14th Floor |
| | Honorable Morrison C. England, Jr. |
| | Chief United States District Judge |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL STATEMENT ......................................................................................2

        A.      Plaintiff Plans a Trip to Walt Disney World................................................2

        B.      United's Peanut Policy................................................................................4

        C.      Plaintiff's Flights .......................................................................................5

III.    LEGAL ARGUMENT ...........................................................................................7

        A.      United Meets the Legal Standards for this Motion .....................................7

        B.      Federal Law Preempts Plaintiff's Claims ...................................................7

                1.      The ADA Expressly Preempts Plaintiff's Claims .............................7

                2.      The FAA Impliedly Field Preempts Plaintiff's Claims.................11

        C.      Even if Not Preempted, Plaintiff's Claims for Relief Are Not
                Legally Sustainable and Do Not Raise Trial Worthy Issues....................12

                1.      Plaintiff Cannot Prove a Negligence Claim .................................12

                2.      Plaintiff Cannot Prove a Fraud Claim .........................................14

                3.      Plaintiff Cannot Prove Any Contract-Based Claim .....................15

                4.      There is No Basis for Punitive Damages .....................................19

IV.     CONCLUSION ...................................................................................................19

# TABLE OF AUTHORITIES

**United States Constitution**

U.S. Const., art. VI, cl.2 ...................................................................................................8

**Federal Cases**

Air Transport Ass'n of America, Inc. v. Cuomo
    520 F.3d 218 (2d Cir. 2008) .....................................................................................10

Am. Airlines v. Wolens
    513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) ...........................................8

Anderson v. Liberty Lobby, Inc.
    477 U.S. 242, 16 S.Ct. 2505, 91 L.Ed.2d 202 (1986)..............................................7

Bahn v. Korean Airlines Co. (In re Korean Air Lines Co.)
    642 F.3d 685 (9th Cir. 2011). ..................................................................................8

Chissie v. Winco Foods LLC,
    No. 2:09-cv-02915-MCE-CKD, 2012 U.S. Dist. LEXIS 17954,
    2012 WL 487652 (E.D. Cal. Feb. 13, 2012)............................................................7

DiFiore v. American Airlines, Inc.
    646 F.3d 81 (1st Cir.), *cert. denied*, 132 S.Ct. 761 (2011) ...................................10

Dooms v. Fed. Home Loan Mortg. Corp.
    CV F 11-0352 LJO DLB, 2011 U.S. Dist. LEXIS 38550
    (E.D. Cal. Mar. 30, 2011)........................................................................................18

Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.
    868 F.Supp.2d 983 (E.D. Cal. 2012) ......................................................................18

French v. Pan Am Express, Inc.
    869 F.2d 1 (1st Cir. 1989) .......................................................................................11

Gibson v. Prudential Ins. Co.
    915 F.2d 414 (9th Cir. 1990) ....................................................................................7

Gilstrap v. United Air Lines, Inc.
    709 F.3d 995 (9th Cir. 2013) ..................................................................................12

Hanni v. Am. Airlines, Inc.,
    No. C 08-0732 CW, 2008 U.S. Dist. LEXIS 120078 2008 WL 1885794
    (N.D. Cal. Apr. 25, 2008)........................................................................................10

Hanson v. America West Airlines, Inc.
    544 F.Supp.2d 1038 (C.D. Cal. 2008) ...................................................................16

Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co.
    414 F.2d 750 (9th Cir. 1969) ..................................................................................16

ii

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No:  2:13-CV-01064-MCE-DAD

*Hickcox-Huffman v. U.S. Airways, Inc.*
    788 F.Supp.2d 1036 (N.D. Cal. 2011) ...............................................................10

*In re Deep Vein Thrombosis Litig.*
    No. MDL 04-1606 VRW, 2007 WL 3010564 (N.D. Cal. Oct. 12, 2007) .......................7

*In re Deep Vein Thrombosis Litig.*
    No. MDL 04-1606 VRW, 2005 WL 591241 (N.D. Cal. Mar. 11, 2005)..........................12

*Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*
    No. 5:12-CV-06209-EJD, 2013 WL 3974537 (N.D. Cal. July 31, 2013)......................17

*Khan ex rel. Haque v. American Airlines, Inc.,* No. 08 CV 5246 (NRB),
    2008 U.S. Dist. LEXIS 99835, 2008 WL 5110852 (S.D.N.Y. Nov. 26, 2008) .................9

*Ko v. Eva Airways Corp.,*
    CV 11-5995-GW(MRWx), 2012 U.S. Dist. LEXIS 190482, (Feb. 23, 2012) ..................10

*Leids v. MetLife Home Loans*
    CV 09-7016 CAS (RZx), 2009 U.S. Dist. LEXIS 122147 2009
    WL 4894991 (C.D. Cal. Dec. 7, 2009) ...............................................................18

*Massachusetts Delivery Ass'n v. Coakley*
    769 F.3d 11 (1st Cir. 2014) ..............................................................................8

*McCarthy v Northwest Airlines, Inc.*
    56 F.3d 313 (1st Cir. 1995) ..............................................................................7

*Montalvo v. Spirit Airlines*
    508 F.3d 464 (2007).......................................................................................11

*Morales v. Trans World Airlines, Inc.*
    504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) ..........................................8

*Nat'l Fed'n of the Blind v. United Airlines, Inc.*
    C 10-4816 WHA, 2011 U.S. Dist. LEXIS 44366,
    (N.D. Cal. Apr. 25, 2011) ...............................................................................10

*Northwest, Inc. v. Ginsberg*
    134 S.Ct. 1422, 188 L.Ed.2d 538 (2014)..............................................................8

*Nugent v. Fed. Home Loan Corp.*
    No. 2:12-CV-0091-TLN-EFB, 2014 WL 4960902 (E.D. Cal. Oct. 1, 2014) ..............17, 18

*Panitch v. Cont'l Airlines*
    No. 06-3611 (JAG), 2008 WL 906240 (Mar. 31, 2008)............................................10

*Rennick v. O.P.T.I.O.N. Care, Inc.*
    77 F.3d 309 (9th Cir. 1996) .............................................................................18

*Rowe v. N.H. Motor Transp. Ass'n.*
    552 U.S. 364, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008) ...........................................10

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No:  2:13-CV-01064-MCE-DAD

*Witty v. Delta Air Lines, Inc.*
    366 F.3d 380 (5th Cir. 2004) ...................................................................................................11

**California Cases**

*Ach v. Finkelstein,*
    264 Cal.App.2d 667 (1968) ..................................................................................................14

*CalFarm Ins. Co. v. Krusiewicz*
    131 Cal.App.4th 273 (2005) ..................................................................................................19

*Ebaugh v. Rabkin*
    22 Cal.App.3d 891 (1972) ....................................................................................................19

*Everett v. State Farm Gen. Ins. Co.*
    162 Cal.App.4th 649 (2008) ..................................................................................................16

*Guz v. Bechtel Nat. Inc.*
    24 Cal.4th 317 (2000) ...........................................................................................................17

*Laks v. Coast Fed. Sav. & Loan Ass'n,*
    60 Cal.App.3d 885 (1976) ....................................................................................................18

*Lazar v. Superior Court*
    12 Cal.4th 631 (1996) ...........................................................................................................14

*Manderville v. PCG&S Group, Inc.*
    146 Cal.App.4th 1486 (2007) ...............................................................................................14

*Miller v. Los Angeles Cty. Flood Control Dist.*
    8 Cal.3d 689 (1973) .............................................................................................................12

*Pasadena Live, LLC v. City of Pasadena*
    114 Cal.App.4th 1089 (2004) ...............................................................................................17

*Small v. Fritz Companies, Inc.*
    30 Cal.4th 167 (2003) ...........................................................................................................14

*Tarmann v. State Farm Mut. Auto. Ins. Co.*
    2 Cal.App.4th 153 (1991).......................................................................................................15

*US Ecology, Inc. v. State*
    129 Cal.App.4th 887 (2005)...................................................................................................17

*Wiener v. Southcoast Childcare Centers, Inc.*
    32 Cal.4th 1138 (2004) .........................................................................................................12

**Federal Statutes**

49 U.S.C. § 40101 ........................................................................................................................1

49 U.S.C. § 41713(b)(1)................................................................................................................1

*California Statutes*

Civ. Code § 3294 ............................................................................................................................19

*Federal Regulations*

14 C.F.R. part 25..............................................................................................................................11

14 C.F.R. part 121 ...........................................................................................................................11

*Other Authorities*

Department of Transportation and Related Agencies Appropriations
Act of 2000, Public Law 106-69 – Oct. 9, 1999...........................................................................13

75 Federal Register 32318 ..............................................................................................................13

75 Federal Register 32332 ..............................................................................................................13

75 Federal Register 36301 ..............................................................................................................13

Defendant UNITED AIRLINES, INC. (hereinafter referred to as "United") respectfully submits this memorandum of points and authorities in support of its motion for summary judgment or partial summary judgment with regard to the first amended complaint ("FAC").

## I.    INTRODUCTION

United stopped serving peanuts on its flights in 1998.  Nonetheless, maintaining she is severely allergic to peanuts, plaintiff says she suffered an anaphylactic reaction to airborne peanut material that somehow emanated from one or two shelled peanuts, she says were located some four rows away from her, while she was a passenger on a United flight from Orlando to Chicago.  She says she was told, before her flights, by two anonymous, "United employees," that if she asked, flight attendants on her Orlando to Chicago flight would make an announcement on her behalf, instructing passengers not to eat peanuts.  Her entire case rests on this premise.  In fact, United's policy is not to make announcements of that kind and, consistent with its policy, no announcement was made on plaintiff's flights.

During the Chicago-bound flight, plaintiff fell ill.  On the advice of a passenger-nurse, the flight was diverted to St. Louis.  There, she was transported to a local hospital, treated and released in less than 24 hours.  Giving short shrift to the many peanut-related reactions she claims to have experienced both before and after the flight, plaintiff contends *this* exposure, on *this* flight, has left her especially vulnerable more severe reactions when she is exposed to – or so much as glimpses – peanuts.

Plaintiff's claims all implicate the service provided by United.  As such, they are expressly preempted by the Airline Deregulation Act of 1978, 49 U.S.C. § 41713(b)(1) ("ADA").  And, because the core contention relates to safety announcements made by United during its flights, her claims are also impliedly field preempted by the Federal Aviation Act of 1958, 49 U.S.C. § 40101, *et seq.* ("FAA").

Federal preemption barriers aside, each of plaintiff's common law claims is also unsustainable as a matter of law and indisputable fact.  Her ability to press any triable issues is also undone by a lack of expert witnesses essential to her case.  Moreover, from the indisputable facts and apposite law, it is clear plaintiff cannot possibly recover punitive damages in this case.

## II.   FACTUAL STATEMENT

### A.   Plaintiff Plans a Trip to Walt Disney World

Plaintiff is allergic to peanuts – or so she says.[1]  On or about March 23, 2011, she and her husband bought a Disney World package tour for themselves and their two children.  Deposition of Patricia Whitman ("Whitman depo." (Grotch decl. at Ex. A)) at 10:17-11:9, 12:3-13, 19:1-16.  This travel package, included round trip airfare and was arranged and purchased through a Triple A office in Elk Grove.  *Id.*  The itinerary included flights in May 2011 from Sacramento to Houston; Houston to Orlando; Orlando to Chicago; and Chicago to Sacramento.  *Id.* at Ex. 1, attached to Grotch decl. as Ex. B.

When booking the trip, plaintiff told travel agent, Patricia Whitman, about her claimed peanut allergy.  *Id.* at 16:16-22; Deposition of Alisa Gleason ("Gleason depo.") (Grotch decl. at Ex. E) at 44:25-46:3.  Plaintiff also claims she was later summoned back to the Triple A office to complete a "questionnaire" that she says was requested by, and somehow electronically mailed back to, United.  Gleason depo. at 46:4-13, 47:24-48:25.  According to the plaintiff, this questionnaire asked her to explain, among other things, "How bad is your allergy?" *Id.* at 46:9.  Although this dispute is also immaterial here,

---

[1]     We don't concede the accuracy of this claim.  In fact, for reasons we explain in this note, among others, this point is vigorously contested.  But this is a dispute that need not be resolved in order to grant summary judgment in favor of United.  The medical evidence *confirms* plaintiff is *not* allergic to peanuts.  Medical records show plaintiff has been tested at least three times for allergies to peanuts.  United's board certified allergy and immunology expert, Dr. Ronald A. Simon, also attests to the fact that plaintiff is not peanut allergic.  See ECF Dkt. 23 at p. 9.  Dr. Rosemary Hallett, the UC Davis allergist to whom plaintiff was referred in the course of her treatment, was unable to conclude that plaintiff was allergic to peanuts.  Deposition of Rosemary Hallett ("Hallett depo.") (Grotch decl. at Ex. C) at 14:13-19.  [True and correct copies of the deposition transcripts cited herein are attached to the Declaration of Richard G. Grotch ("Grotch decl.") filed in support of this motion.]  Dr. Hallett opines that plaintiff "may have other issues that are causing her symptoms" – issues unrelated to peanuts.  *Id.* at 14:22-15:14.  Dr. Michelle Park was plaintiff's primary care physician.  Deposition of Michelle Park ("Park depo.") (Grotch decl. at Ex. D) at 10:23-25.  It is her "medical opinion that [plaintiff] does not have an IgE reaction, allergy to peanuts. . . She does not have an allergy as we would define it."  *Id.* at 66:2-9.

Moreover, plaintiff has not disclosed any retained experts at all, much less any who can speak to two case-dispositive issues:  (1) that plaintiff *is* allergic to peanuts notwithstanding all the objective medical evidence to the contrary and (2) that it *is* possible to have an anaphylactic reaction to airborne peanut material located four rows away on an airliner even though there is no peer-reviewed science that says that can happen.  See n.15, *infra*.

Ms. Whitman denies this occurred.  Whitman depo. at 32:17-33:3.  United also disputes the existence of the purported "questionnaire." Declaration of Rosalie Crabbe at ¶¶ 2-3.

In the FAC, plaintiff alleges that "*prior to purchasing* the family airfares," she contacted United to confirm two things.  FAC, ¶ 10, emphasis added.  First, she says she validated "that there would be 'no problem' as no such peanut of peanut-related product would be available on Defendant UNITED's flight from Orlando, FL to Chicago, IL."  *Id.*  Second, she was reportedly advised "that [her] medical needs would be accommodated since an in-air flight announcement would advise the other passengers of Plaintiff's severe allergic condition."  *Id.*

Plaintiff's case is founded on these alleged contacts with United – contacts she says were made in two phone calls to a United customer service number.  Gleason depo. at 53:8-10.  Plaintiff claims the first "very quick call" – to someone she can identify only as female – was about a week and a half or so after the vacation package was booked.  *Id.* at 49:21-52:2.

Plaintiff claims she told the woman (a) the dates she was flying, (b) that she has "a severe peanut allergy" and (c) that she "just answered another questionnaire … from you guys."  *Id.* at 49:23-50:11.  Upon hearing the "questionnaire" had been submitted, when plaintiff asked the agent "is there an announcement or something that can be made?," the agent reportedly told her to "[t]alk to the head flight attendant, and they can do it."  *Id.* at 50:11-16.

She says she made her second call to United three days before the family's scheduled departure.[2]  *Id.* at 52:4-6.  On this occasion, plaintiff claims to have spoken with someone she can only identify as male.  *Id.*  Supposedly recounting what he claimed *he was told* by yet another anonymous person – an unnamed female "supervisor" – he allegedly said plaintiff should just go to the flight attendant and tell her that you're on the plane, and for them to make an announcement for the people to refrain from eating any peanuts while you're on the plane."  *Id.* at 52:13-19.  This innominate man is also alleged to

---

[2]     This is belied by the phone records plaintiff has produced, showing a call four days prior to departure, but to Continental Airlines, not United.  Grotch decl. at ¶ 12, Ex. K.

have said:  "United is a nut-free plane.  We don't serve nuts on the plane or anything that has nuts on the plane" and "tell them to do it, and they should accommodate you.  They should do it.  It should be great and very easy."  *Id.* at 52:19-22, 53:4-6.

## B.    United's Peanut Policy

Plaintiff claims she exercised an "abundance of caution" in finding out about United's peanut policies before buying her airline tickets.  FAC, ¶ 10.  Not so.  Even more to the point, she never even consulted the prime source of information – United's website.[3]  Gleason depo. at 55:14-16.  Had she done so, plaintiff would have seen United's cautionary admonition:

> Peanut information
> United does not serve peanuts as snacks or use peanuts or peanut oils in foods served on our flights. However, we do serve vendor products manufactured in facilities that also produce items containing peanuts or peanut oils, and we do have snack mixes that contain other tree nuts, such as almonds and pistachios. Since we cannot prevent customers from bringing onboard their own peanuts or food items containing peanut products, **we cannot guarantee a nut-free environment**. When making your travel arrangements, we recommend that you assess the extent of any allergies or other medical conditions to determine if air travel is the right choice for you.[4]  (Emphasis added).

Declaration of L MacTavish Thomas at ¶ 2.

"It is **not United's policy** to make announcements regarding peanut allergies."  Declaration of Sandra Ingram at ¶¶ 2-3.  That is what United flight attendants are instructed in their FAA-reviewed and accepted Flight Attendant Operations Manual ("FAOM").  *Id.* at Ex. A.  It is this FAOM that directs

---

[3]      Plaintiff's testimony, and that of her husband, reveals an apparent lack of concern about peanut policies.  For one, the tickets were purchased *before* plaintiff says she made any calls to United.  And plaintiff testified that, in terms of airlines, "I wasn't picky."  Gleason depo. at 44:9-24.  Her husband testified in terms of airlines, "[w]e went with the cheapest."  Deposition of James Gleason ("J. Gleason depo.") (Grotch decl. at Ex. F) at 28:22-24.

[4]      While plaintiff did – on a previous occasion – consult with her physician about whether to fly given her severe *anxiety* about flying, we see no indication in the medical records that plaintiff ever consulted with any of her doctors about any peanut-related travel concerns.  Moreover, the records evidence plaintiff's awareness of a link between her difficulty breathing and her anxiety.  Grotch decl. at ¶ 13, Exs. L and M.  In view of the objective evidence that plaintiff *is not* peanut allergic (see n.1, *supra*), but *is* anxious about flying, and has difficulty breathing when anxious, it would appear plaintiff's reaction on the Chicago-bound flight is a reaction to anxiety, not to peanuts.

4

flight attendants on how they are expected to perform their duties.  *Id.* at ¶ 4.  Here, as we will show, the conduct of the flight attendants – behavior plaintiff assails – was fully consistent with the airline's policy.

**C.   Plaintiff's Flights**

Plaintiff took two flights to get from Sacramento to Orlando.  Whitman depo. at Ex. 1.  On both, plaintiff asked flight attendants to make an announcement about her peanut allergy.  Gleason depo. at 58:15-23 (Sacramento-Houston); 62:8-25 (Houston-Orlando).  *Both times*, she was told, "no," the requested announcement would *not be* made.  *Each time*, she claims she was told *exactly* the same thing – "[w]e cannot infringe on anybody else's rights because of your allergies" – before being told to take her seat.  *Id.*

So, the flight from Orlando to Chicago was plaintiff's third flight during her vacation.  Nearly *everything* about her conversation with the flight attendant on the third flight was reportedly identical to the conversations she had had with the flight attendants on the first two flights.

In Orlando, as she boarded, plaintiff approached the lead flight attendant, Kevin Griffith, and insisted on speaking with him urgently.  *Id.* at 74:14-75:9.  She says he didn't want to talk to her.  *Id.* When she told him she had "a severe peanut allergy," she says he responded, "what do you want me to do about it?"  *Id.*  She told him she spoke with "corporate" and "corporate" said he "would make an announcement that [she] was on the plane and ask people to refrain from eating [peanuts]."  *Id.* Remarkably, plaintiff says his response was identical to what the two previous flight attendants said:  "we cannot infringe on everyone else's rights because of your allergy."  *Id.*

An announcement wasn't made to the more than a hundred other people on the aircraft advising them of plaintiff's claimed medical condition and instructing them not to eat peanuts during the approximately two and a half hour flight.[5]  We reiterate:  not making the announcement was fully

---

[5]      When plaintiff was told no announcement would be made about her peanut allergy, the plane was on the ground, at the gate, with the boarding door open; when deposed, she wasn't sure, but thought the door was open at that time.  Gleason depo. at 75:20-23.  As such, she was at liberty to disembark and find another mode of transportation.

consistent with United's policy.  As one of the flight attendants testified, "ever since I've been flying, we've just always kind of known we're not supposed to make an announcement over the intercom about peanut allergies."  Deposition of Erika Nelson ("Nelson depo.") (Grotch decl. at Ex. G) at 40:1-4.

Nonetheless, Mr. Griffith's response angered plaintiff – "it took everything in me not to jump his ass."  Gleason depo. at 76:-8-13.  But she took her seat.  *Id.* at 76:18-19.  Approximately an hour into the flight, "all of a sudden, the air around me just went away.  I just – I felt no air, I felt very heavy in my chest, and my nose started running, and my ears started running, and I was like oh, no.  Oh, no.  Oh, no."  *Id.* at 80:9-23.  Recognizing this was the same response she previously had when *consuming* something that had come into contact with peanuts, plaintiff immediately concluded she was having an allergic reaction to peanuts.

After she began having difficulty breathing, plaintiff got up and "smelled the peanuts" she already concluded must have been present.  *Id.* at 80:24-81:4.  As she walked toward the lavatory, plaintiff says she saw, four rows behind her, in the middle seat, a woman was eating "maybe one or two nuts she had cracked."  *Id.* at 84:25-85:5.

Plaintiff returned to her seat and used her inhaler.  *Id.* at 81:7-11.  Flight attendant Erika Nelson heard plaintiff cough and the sound of the cough concerned her.  Nelson depo. at 18:20-19:17.  She went over to plaintiff and knelt beside her; plaintiff told her she wasn't feeling well and was having trouble breathing.  *Id.* at 19:28-24.  Plaintiff looked okay (*id.* at 20:5-15), but Ms. Nelson nevertheless provided plaintiff with oxygen (*id.* at 20:16-20).  She also saw that an announcement was made for medical assistance from any medically-qualified passengers.  *Id.* at 24:10-24.

Two nurses responded.  One took control of the situation.  *Id.* at 25:1-6.  He used the medical kit made available to him by the flight attendants (*id.* at 25:20-23) and recommended plaintiff get on the ground so she could obtain medical attention (*id.* at 26:15-20).  With Ms. Nelson as the liaison between the nurse and the pilots, when the nurse recommended a diversion, the crew executed it with exceptional

efficiency.  Nelson depo. at 30:4-31:5.  As plaintiff describes it, "so within three drops, we were on the

floor.  He plateaued, then he plateaued, and boom, we were on the ground."  Gleason depo. at 84:9-11.

In St. Louis, paramedics were on scene quickly.  Nelson depo. at 31:19-20.  They attended to

plaintiff and transferred her to a nearby hospital.  Grotch decl. at Ex. N.  In their report, the EMTs

noted that: "pt's husband states pt got a peanut shell *in her mouth*."  *Id.*, emphasis added.  After spending

less than 24 hours at the Depaul Health Center, plaintiff was discharged.  She claims that as a result of

whatever reaction she had on the plane, her "life is completely changed, completely. Because now [her]

allergy," she says, is airborne.  It's airborne."  Gleason depo. at 138:3-5.

## III.   LEGAL ARGUMENT

### A.   United Meets the Legal Standards for this Motion

"Once a properly documented motion has engaged the gears of Rule 56, the party to whom the

motion is directed can shut down the machinery only by showing that a trialworthy issue exists."  *In re*

*Deep Vein Thrombosis Litig.*, MDL 04-1606 VRW, 2007 WL 3010564, at *2 (N.D. Cal. Oct. 12, 2007),

citing *McCarthy v Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995).  One of the principal purposes

of Rule 56 is to dispose of factually unsupported claims or defenses.  *Chissie v. Winco Foods, LLC*, No.

2:09-cv-02915-MCE-CKD, 2012 U.S. Dist. LEXIS 17954, 2012 WL 487652 (E.D. Cal. Feb. 13, 2012).

The Court is required to determine whether genuine issues of material fact exist, resolving doubts

in favor of the party opposing the motion.  But, "[o]nly disputes over facts that might affect the outcome

of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 16 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Material facts are those that

may affect the outcome of the case.  *Id.*

Purely a question of law, federal preemption is appropriately resolved by summary judgment.

See, e.g., *Gibson v. Prudential Ins. Co.*, 915 F.2d 414, 416-417 (9th Cir. 1990).

///

///

7

**B.    Federal Law Preempts Plaintiff's Claims**

**1.    The ADA Expressly Preempts Plaintiff's Claims**

By 1978, with the nation's airlines mired in regulations promulgated by the Civil Aeronautics Board, and persuaded "'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality ... of air transportation services,' [Congress] enacted the Airline Deregulation Act (ADA)." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). "To ensure that the States would not undo federal deregulation with regulation of their own, the ADA included a pre-emption provision."[6] *Id.*  As presently codified, the preemption clause prohibits states from enacting or enforcing any law "related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).

The Supreme Court has squarely addressed issues of ADA preemption three times.[7]  One consistent thread in the Supreme Court's ADA preemption jurisprudence is the proposition that the ADA is expressed in "purposefully expansive" terms and is *broadly* preemptive.[8]  The expansive sweep of the ADA's preemption clause means federal law preempts any state law "having a connection with *or reference to* airline 'rates, routes, or services.'" *Morales*, 504 U.S. at 384 (emphasis added).  Here, far more

---

[6]     The supremacy clause of the Constitution (U.S. Const., art. VI, cl. 2) empowers Congress to preempt state law.  When it deregulated interstate commercial aviation with the ADA, Congress exercised this power by including an express preemption provision in the law.

[7]     *Morales*, *supra*, 504 U.S. 374, *Am. Airlines v. Wolens*, 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), *Northwest, Inc. v. Ginsberg*, 134 S.Ct. 1422, 1428, 188 L.Ed.2d 538 (2014).

[8]     Over more than two decades, the Court has cleaved to the position that the ADA preemption clause expresses "a broad preemptive purpose" and is both "deliberately expansive" and "conspicuous for its breadth."  See *Morales*, 504 U.S. at 383-384; *Ginsberg*, at 1429-1430 (recalling that in *Wolens* the Court "reaffirmed *Morales*' 'broad interpretation of the ADA pre-emption provision'" and doing so again in the case before it); *Massachusetts Delivery Ass'n v. Coakley*, 769 F.3d 11, 18 (1st Cir. 2014) (noting the *Ginsberg* court "highlighted the breadth of the test" for preemption under the ADA).

8

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No:  2:13-CV-01064-MCE-DAD

than presenting "run-of-the-mill" personal injury claims, the plaintiff seeks directly to regulate how United serves and communicates with its customers.[9]

Plaintiff's allegations mirror those in *Khan ex rel. Haque v. American Airlines, Inc.*, No. 08 CV 5246 (NRB), 2008 U.S. Dist. LEXIS 99835, 2008 WL 5110852 (S.D.N.Y. Nov. 26, 2008) – a case that illustrates why plaintiff's claims here are ADA preempted. The plaintiff in *Khan* claimed her son had a "severe life threatening anaphylactic allergy to treenuts and to nuts." *Id.* at * 2. She called American's corporate office to advise of her son's allergy and her family's travel plans. *Id.* She called the airline a second time, a week before the flight, to make a record of her son's allergy and ensure the crew of the family's flight would know about it. *Id.*

When the family arrived at the airport, the plaintiff advised the gate agent of her son's "life threatening tree nut and peanut allergy." The agent checked the computer and told plaintiff "*no nuts of any kind would be served on the flight.*" *Id.,* emphasis in original. Plaintiff then boarded the flight with her family. *Id.* When she advised a flight attendant about her son's allergy, the lead flight attendant was summoned; he told plaintiff no nuts would be served in the main cabin, but he had to serve nuts in First Class. *Id.* at * 3. Another flight attendant then allegedly "came charging down the plane aisle shouting in a loud and abusive voice 'Alright, which one of you is the allergy victim?'" and told plaintiff she would be serving nuts "despite the allergy complained of and despite prior assurances." *Id.*

Just as in this case, the plaintiff suggested the flight attendant make an announcement to passengers about her son's allergy. *Id.* But the flight attendant allegedly said, "sarcastically and in a belittling tone 'exactly what do you want us to say-don't buy the nuts?'" *Id.* And, as here, the flight attendant allegedly told the plaintiff "we cannot discriminate against all these people for just one person."

---

[9]     Another animating precept of preemption is the goal of fostering legal uniformity. With respect to the ADA, the Ninth Circuit has observed that Congress sought to safeguard against creation of "a confusing patchwork of regulations for airline passengers to navigate." *Bahn v. Korean Airlines Co. (In re Korean Air Lines Co.)*, 642 F.3d 685, 694 (9th Cir. 2011). Uniformity plays a critical role in aviation. It also moots questions like this one: why would California law apply to this flight from Florida to Illinois, that involved the conduct of Colorado-based flight attendants working for an Illinois-based, Delaware corporation?

9

*Id.*  The issue framed by American's motion to dismiss was whether the conduct about which the plaintiff complained, related to "services" provided by the air carrier.  If so, plaintiff's claims were preempted by the ADA.

The Court noted the clear majority of circuits construe airline "service" as referring to "the provision or anticipated provision of labor from the airline to its passengers and encompass[ing] matters such as boarding procedures, baggage handling, and food and drink-matters incidental to and distinct from the actual transportation of passengers."  *Id.* at *7, quoting *Air Transport Ass'n of America, Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008).[10]  Therefore, "[o]nboard amenities, regardless of whether they are luxuries or necessities, still relate to airline service and fall within the express terms of the preemption provision."  *Cuomo* at 223-224.  As the *Khan* court held, "[s]ervice of onboard amenities, such as nuts, includes not merely the physical dispensation of these amenities but the necessary communications with passengers regarding these amenities.  Statements by airline employees in response to queries about food service fall comfortably within the broad construal of 'service' contemplated by the *Cuomo* court."  *Khan*, at * 11.  The *Khan* court also held that "[t]o the extent that the IIED claim is based on alleged misinformation provided by defendant's agents, that claim is preempted by section 41713(b)(1)."[11]  *Id.*

---

[10]  Although *Cuomo* acknowledged the Ninth Circuit had taken a more narrow view of what constitutes an airline "service," the Ninth Circuit's construction dates back to 1999.  Its construction is now outmoded and simply cannot be squared with subsequent Supreme Court precedent, including *Rowe v. N.H. Motor Transp. Ass'n.*, 552 U.S. 364, 128 S.Ct. 989, 169 L.Ed.2d 933 (2008) and *Ginsberg, supra*, 134 S.Ct. 1422.  Even before *Ginsberg*, both the First and Second Circuits specifically noted that the Ninth Circuit's definition of an airline "service" is incompatible with Supreme Court precedent in *Rowe*.  *DiFiore v. American Airlines, Inc.*, 646 F.3d 81, 88 & n.9 (1st Cir.), *cert. denied*, 132 S.Ct. 761 (2011); *Cuomo*, 520 F.3d at 223.  District courts in this state have also explained that *Rowe* "necessarily define[s] 'service' to extend beyond prices, schedules, origins, and destinations[,]" which is how the Ninth Circuit had narrowly defined the term in *Charas*.  See *Nat'l Fed'n of the Blind v. United Airlines, Inc.,* C 10-4816 WHA, 2011 U.S. Dist. LEXIS 44366, at *14 (N.D. Cal Apr. 25, 2011), quoting *Hanni v. Am. Airlines, Inc.*, No. C 08-0732 CW, 2008 U.S. Dist. LEXIS 120078, 2008 WL 1885704, at *6 (N.D. Cal. Apr. 25, 2008) (citation omitted); see also *Ko v. Eva Airways Corp.*, CV 11-5995-GW (MRWx), 2012 U.S. Dist. LEXIS 190482, at *14 (Feb. 23, 2012).

[11]  On cross-motions for summary judgment, precisely the same conclusion regarding ADA preemption was reached by the district court (in a different circuit than *Khan*) in another peanut allergy case, *Panitch v. Cont'l Airlines*, No. 06-3611 (JAG), 2008 WL 906240 (Mar. 31, 2008).

10

*Khan* shows how and why all of plaintiff's claims in this case, rooted as they are in state law, are preempted by the ADA.[12]

**2.      The FAA Impliedly Field Preempts Plaintiff's Claims**

Plaintiff's claims are also impliedly field preempted by the FAA and its related regulations. Plaintiff's case is, in essence, one alleging that United failed to warn passengers that she was severely allergic to peanuts, was on the plane and that peanuts should not be consumed lest her safety and wellbeing be jeopardized.  As both the Ninth Circuit and the Fifth Circuit have held, announcements that airlines make to passengers is a sub-field of aviation safety that is pervasively regulated.  See *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (2007) (the FAA and regulations promulgated pursuant to it, establish complete and thorough safety standards for air travel, which are not subject to supplementation by, or variation among, state laws) and *Witty v. Delta Air Lines, Inc.*, 366 F.3d 380, 385 (5th Cir. 2004) (same and adverting to another practical problem associated with allowing air crews to add to the information they are federally mandated to provide.  That is that "the import of one warning is diluted by additional warnings that might be imposed under state law.").

Both *Montalvo* and *Witty* involved allegations that airlines failed to warn passengers of alleged risks of developing DVT, particularly during long flights.  In *Montalvo*, the Ninth Circuit pointed to the promulgation of pervasive regulations (itself indicia of preemptive intent), including, notably, "a number of specific federal regulations that govern the warnings and instructions which must be given to airline passengers."  508 F.3d at 472-473.  The oral briefings, familiar to air travelers, which flight attendants must give passengers, all are detailed in federal regulations (14 C.F.R. pts. 25, 121) and in a Federal Aviation Administration advisory circular.  *Id.*  The Ninth Circuit concluded the comprehensiveness of

---

[12]      Plaintiff may argue her contract claims survive preemption.  They don't.  Just like her identical tort claims, plaintiff's contract claims seek to enforce state-imposed obligations – and those are preempted.  See *Hickcox-Huffman v. U.S. Airways, Inc.*, 788 F.Supp.2d 1036 (N.D. Cal. 2011) (finding contract claim ADA preempted because "[d]efendant had no contractual obligation to provide Plaintiff with a refund when her luggage was temporarily misplaced").

these regulations demonstrates that the Administrator has exercised his authority to regulate aviation safety, including passenger announcements, to the exclusion of the states.[13]  *Id.* at 473.

Indeed, testimony from United, in this case, is that information provided to passengers through announcements is closely tied to the dictates of federal regulators.  Deposition of Stephanie Pollak ("Pollak depo.") (Grotch decl. at Ex. J) at 44:2-25; Deposition of Sandra Ingram ("Ingram depo.") (Grotch decl. at Ex. I) at 29:7-30:11.  Flight attendants are required to stick to a "script" that closely tracks federally-mandated warnings; they are not at liberty to "ad lib" and provide additional announcements that passengers might ask them to make.  *Id.*  It was for this reason, and because flight attendants are instructed that "[i]t is not United's policy to make announcements regarding peanut allergies," that Kevin Griffith, the lead flight attendant on the subject flight, declined to make such an announcement.[14]  Deposition of Kevin Griffith (Grotch decl. at Ex. H) at 26:11-18; Pollak depo. at 52:15-21.

### C.   Even if Not Preempted, Plaintiff's Claims for Relief Are Not Legally Sustainable and Do Not Raise Trial Worthy Issues

#### 1.   Plaintiff Cannot Prove a Negligence Claim

Plaintiff's first cause of action sounds in negligence.  It requires that she prove several familiar elements: (1) United had a legal duty to conform to a standard of conduct to protect her; (2) United

---

[13]   The Ninth Circuit feared if individual state requirements for passenger warnings were not preempted, "each state would be free to require any announcement it wished on all planes arriving in, or departing from, its soil, or to impose liability for the violation of any jury's determination that a standard the jury deems reasonable has been violated.  Such a 'patchwork of state laws in this airspace ... would create a crazyquilt effect.' " *Id.* at 473, quoting *French v. Pan Am Express, Inc.*, 869 F.2d 1, 6 (1st Cir. 1989).  As both the district court and the Ninth Circuit recognized, Congress couldn't have intended the adequacy of airline warnings/announcements to hinge on where each passenger on each flight was likely to file suit as that would be an anathema to the FAA. *Montalvo*, 508 F.3d at 473; *In re Deep Vein Thrombosis Litig.*, No. 04-1606, 2005 WL 591241, at *13.

[14]   Although the Ninth Circuit has subsequently cabined the preemptive sweep announced in *Montalvo* to preemption of a state law *standard of care* in a field that is pervasively regulated (such as what announcements are made to passengers) (*Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995 (9th Cir. 2013)), here plaintiff has not alleged – and certainly cannot prove – that United violated a federal standard of care.  As such, *Gilstrap* doesn't help plaintiff at all.

failed to meet this standard of conduct; (3) United's failure was the proximate or legal cause of the resulting injury; and (4) she was damaged.  See *Wiener v. Southcoast Childcare Centers, Inc.*, 32 Cal.4th 1138, 1142 (2004).

In trying to meet this burden, plaintiff immediately runs headlong into an insurmountable problem.  She can't prove the standard of care to which United was required to conform.  Where, as here, the standard of care in the relevant industry is not within the common knowledge of a layperson, expert testimony is required to establish the standard of care.  *Miller v. Los Angeles Cty. Flood Control Dist.*, 8 Cal.3d 689, 702-703 (1973) (nonsuit was properly granted because of a lack of expert testimony establishing that defendant failed to exercise due care when constructing a home).  But plaintiff didn't disclose an expert on the applicable standard of care – or any retained expert at all (Dkt. 24) – and the time to have done so has long since passed.  Dkt. 25.

As discussed above, the policies and procedures with which airline crew members are required to comply are complex – the product of an intricate, pervasive regulatory process.  They are not matters of common knowledge among laypeople.  In determining what regulations should be promulgated, and what the regulations should command, the regulators engage in a deliberative procedure that includes a particular rulemaking process.[15]  Regulators solicit input, employ their expertise and weigh numerous competing considerations in the process of formulating the rules to be followed by those who are

---

[15]   See http://www.dot.gov/regulations/rulemaking-process, last visited Nov. 24, 2014, for what the DOT characterizes as a "brief" and "simple" explanation of the rulemaking process.

Very significantly, the subject of air carrier practices concerning the serving of peanuts has been the subject of the DOT rulemaking process.  See 75 FR 36301.  On June 8, 2010, DOT published an NPRM on Enhancing Airline Passenger Protections (75 FR 32318).  Among other things, it solicited comments on three options "that would provide greater access to air travel for persons with peanut allergies" and comment on "whether it would be preferable to maintain the current practice of not prescribing carrier practices concerning the serving of peanuts." (75 FR 32318, 32332).  Consistent with Section 346 of the Department of Transportation and Related Agencies Appropriations Act of 2000, Public Law 106-69 – Oct. 9, 1999, DOT has deferred regulatory action until such time as there is "a peer-reviewed scientific study that determines that there are severe reactions by passengers to peanuts as a result of contact with very small airborne peanut particles of the kind that passengers might encounter in an aircraft."  The lack of such a peer-reviewed study is extremely problematic in terms of plaintiff's ability to prove causation in this case.

regulated.  United has provided testimony in this case showing that the process of *implementing* regulations – so they can be used by working flight attendants – is also complex, multifaceted and dependent upon industry expertise.[16]

Without an expert to explain the applicable standard of care, it is impossible for plaintiff to prove United deviated from the standard.  This is particularly true given the (understandable) dearth of legal precedent establishing that airlines are duty-bound to make public announcements about health issues with which their passengers may be afflicted.

### 2.        Plaintiff Cannot Prove a Fraud Claim

To establish her claim for fraudulent misrepresentation (fourth cause of action), plaintiff must prove *all* of the following: (1) United represented to her that an important fact was true; (2) that representation was false; (3) United knew that the representation was false when it was made, or United made the representation recklessly and without regard for its truth; (4) United intended that plaintiff rely on the representation; (5) plaintiff reasonably relied on the representation;[17] (6) she was harmed; and (7) her reliance on United's representation was a substantial factor in causing her harm.  *Manderville v. PCG&S Group, Inc.*, 146 Cal.App.4th 1486, 1498 (2007); *Ach v. Finkelstein*, 264 Cal.App.2d 667 (1968) (all of these elements must be present for fraud to be found; the absence of a single element is fatal to recovery).  The same elements comprise a cause of action for negligent misrepresentation (second cause of action), except there is no requirement of intent to induce reliance.  *Small v. Fritz Companies, Inc.*, 30 Cal.4th 167, 173 (2003).

---

[16]        This internal process involves, *inter alia*, "everything from research of regulatory requirements, research and investigation into incidents and situations that occur[,]" "liaison with other divisions [within the company], because policies and procedures for flight attendants can be affected by changes made by other departments[,] "and then a determination is made as to what policy and procedure could be impacted. And then we rely on various subject matter experts to help develop and craft the policy or procedural change.  We also would conduct a risk assessment to determine if we make a change to a certain policy or procedure, what are any, identify any potential risks that that could have and determine if that change is indeed warranted."  Ingram depo. at 23:10-24:7.

[17]        The mere fact that plaintiff's two prior requests for announcements about her peanut allergy were not made goes a very long way toward defeating the notion that it was reasonable for plaintiff to expect a different outcome on her third attempt.

14

For fraud claims against a corporation, such as these, the plaintiff must prove the names of the persons who made the misrepresentations, their authority to speak for the corporation, to whom they spoke, what they said or wrote, and when it was said or written. *Lazar v. Superior Court*, 12 Cal.4th 631, 645 (1996). Plaintiff has not even *alleged* these things (as she must) and she certainly cannot *prove* them.

The reality is, plaintiff: (a) has no idea *who* supposedly told her an announcement would be made on her flights; (b) has no evidence these anonymous voices at the end of a phone line were authorized to speak for United; (c) can only paraphrase the gist of what was purportedly said; and (d) can only vaguely identify when the statements were reportedly made.[18]  In *Tarmann v. State Farm Mut. Auto. Ins. Co.,* 2 Cal.App.4th 153, 158-159 (1991), the plaintiff's mere failure to *plead* who it was that supposedly made a misrepresentation to her was fatal to her case at the outset. It is here, too, because, among other things, without knowing who supposedly made representations to her about future conduct, there is absolutely no way plaintiff can establish, as she must, that the anonymous customer service agents *intended* to deceive her.

### 3.  Plaintiff Cannot Prove Any Contract-Based Claim

Four of plaintiff's causes of action are rooted contract.[19]  For plaintiff, all these claims are also problematic and ultimately untenable – for several reasons. First, there is *only* one contract to which United and plaintiff were parties. It is the written contract of carriage ("COC") in effect on the date plaintiff purchased her tickets, March 23, 2011. Declaration of Carol Swanson ("Swanson decl.") at Exhibit A. There is no term or provision in the COC to which plaintiff has pointed – or could ever point – to argue that United breached the contract and thereby caused her to sustain damages.

---

[18]   In this respect, plaintiff testimony and the documentary evidence she belatedly produced (cell phone records) don't square. Grotch decl. at ¶ 12, Ex. K.

[19]   These are plaintiff's third cause of action (promissory estoppel), fifth cause of action (breach of contract), sixth cause of action (tortious breach of contract) and seventh cause of action (breach of the implied covenant of good faith and fair dealing).

From her discovery responses, it seems plaintiff contends some portion of her contract with United was an *oral* contract ("[t]he only parts of the contract that were not in writing were the telephone confirmations by the unidentified UA customer service agents in approximately May 2011 that confirmed that UA would make accommodations of [sic] my severe peanut allergy").  Grotch decl. at ¶ 15, Ex. O.

The COC expressly provides that:

```
NO EMPLOYEE OF UA HAS THE AUTHORITY TO ALTER, MODIFY,
OR WAIVE ANY PROVISION OF THE CONTRACT OF CARRIAGE OR
OF THIS TARIFF UNLESS AUTHORIZED BY A CORPORATE
OFFICER OF UA. UA APPOINTED AGENTS AND REPRESENTATIVES
ARE ONLY AUTHORIZED TO SELL TICKETS FOR AIR
TRANSPORTATION PURSUANT TO APPROVED FARES, RULES, AND
REGULATIONS OF UA.
```

Swanson decl. at Ex. A, p. 4.

Agents can bind their principals *only if* they have actual or apparent authority to do so.  *Hawaiian Paradise Park Corp. v. Friendly Broadcasting Co.*, 414 F.2d 750, 755 (9th Cir. 1969).  Actual authority may be either express or implied.  *Id.*  If a principal specifically authorizes an agent to act, the agent has express authority to take that action. *Id.*  But if a principal "merely states the general nature of what the agent is to do, the agent is said to have implied authority to do acts consistent with the direction."  *Id.*

The language quoted above, from the COC, shows the anonymous reservations agents with whom plaintiff claims to have spoken, who plainly weren't corporate officers, didn't have express authority to bind United to a side agreement pertaining to plaintiff's travel arrangements.

Nor is there any evidence of any kind that the unidentified reservations agents had any implied authority, either.  See *Hanson v. America West Airlines, Inc.*, 544 F.Supp.2d 1038, 1043 (C.D. Cal. 2008) (holding representations by a known, *identified* airline agent, to a passenger, to the effect that all efforts would be made to recover and take special precautions to protect the plaintiff's robotic head, mistakenly left in the overhead compartment after a flight, did not alter the terms of the COC which contained language virtually identical to the language in the United COC).

Since plaintiff cannot point to any provision of the COC that United breached so as to cause her damages, and because the phone call to unknown reservations agents without authority to bind United to a new or modified contract pertaining to how flight attendants would conduct themselves on a future flight, plaintiff cannot prove a prima facie case of breach of contract.

Where, as here, the plaintiff cannot establish that the defendant breached a contractual obligation, she cannot claim the defendant breached the implied covenant of good faith and fair dealing. See *Everett v. State Farm Gen. Ins. Co.*, 162 Cal.App.4th 649, 663 (2008) ("Because there was no breach of contract, there was no breach of the implied covenant"). The implied covenant of good faith and fair dealing's application is "'limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract.'" *Nugent v. Fed. Home Loan Corp.*, No. 2:12-CV-0091-TLN-EFB, 2014 WL 4960902, at *5 (E.D. Cal. Oct. 1, 2014), quoting *Pasadena Live, LLC v. City of Pasadena,* 114 Cal.App.4th 1089, 1093-1094 (2004). To paraphrase the *Pasadena Live* Court, the covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, which in this case do not include an agreement on the part of United to provide peanut announcements on plaintiff's flights in May 2011.

The tortious breach of contract claims also fail because they are superfluous of the ordinary contract claim. "A plaintiff may claim breach of contract and the implied covenant of good faith and fair dealing, but when both causes of action cite the same breach, the cause of action for breach of the implied covenant of good faith and fair dealing may be superfluous with the cause of action for breach of contract. *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 5:12-CV-06209-EJD, 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013), citing *Guz v. Bechtel Nat. Inc.,* 24 Cal.4th 317, 327 (2000) ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on the same breach is superfluous."). Here, the facts animating the allegations of all the contract claims are the same – that someone at United allegedly assured plaintiff a public address announcement about her peanut allergy would be made on her flights.

17

Finally, plaintiff's only remaining claim is one for promissory estoppel. "[P]romissory estoppel claims are aimed solely at allowing recovery in equity where a contractual claim fails for a lack of consideration, and in all other respects the claim is akin to one for breach of contract . . . ." *US Ecology, Inc. v. State*, 129 Cal.App.4th 887, 904 (2005). Here, because the problem isn't a lack of consideration, the doctrine has no application. Where there is no dispute regarding adequacy of consideration there is no need to provide a substitute for consideration, and a claim for promissory estoppel is superfluous. *Leids v. MetLife Home Loans*, CV 09-7016 CAS (RZx), 2009 U.S. Dist. LEXIS 122147, *19, 2009 WL 4894991 (C.D. Cal. Dec. 7, 2009) (dismissing promissory estoppel claim).

Even if plaintiff could theoretically maintain a promissory estoppel claim, it fails on its merits. To succeed, plaintiff must prove "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by [her] reliance." *Nugent v. Fed. Home Loan, supra*, 2014 WL 4960902, at *5, quoting *Laks v. Coast Fed. Sav. & Loan Ass'n*, 60 Cal.App.3d 885, 890 (1976). Here, plaintiff can't even prove the first element.

All she can point to are calls to two anonymous hearsay (or multiple hearsay) declarants, on uncertain dates, in which she claims to have been told to ask a flight attendant to make an announcement about her peanut allergy, and if she did, an announcement would be made. In terms of proving a clear promise was made to her, this is insufficient. See *Dooms v. Fed. Home Loan Mortg. Corp.*, CV F 11-0352 LJO DLB, 2011 U.S. Dist. LEXIS 38550, *20 (E.D. Cal. Mar. 30, 2011) (holding promissory estoppel claim was insufficiently alleged where, among other things, "[t]he complaint ties alleged promises to no particular … representative of a defendant"). Moreover, even if she could prove a clear promise, she cannot prove her reliance upon what was said was reasonable. First, she knew or should have known that the anonymous reservations agents were not authorized to speak for, and bind, unknown flight attendants on some future flight. Second, since on both of the two prior flights, she made the same request for an announcement about her peanut allergy, and was told no announcement would be made, it

18

was unreasonable to believe, against her own prior experience, it would be made on the third flight. Finally, when plaintiff was told no announcement would be made, she was free to disembark and find another means of transportation. "[I]t is well-established that "reliance must be reasonable to set up an estoppel." *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F.Supp.2d 983, 996 (E.D. Cal. 2012), quoting *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 317 (9th Cir. 1996).  Here, plaintiff can't possibly prove her reliance was reasonable.

### 4.      There is no Basis for Punitive Damages

In her prayer, among other remedies, plaintiff seeks "exemplary or punitive damages" pursuant to California law.  There is neither a basis in fact or in law for such damages.

Two of plaintiff's claims are negligence-based.  Mere negligence, even gross negligence, however, is not sufficient to justify an award of punitive damages.  *Ebaugh v. Rabkin*, 22 Cal.App.3d 891, 894 (1972).  *"There must be an intent to vex, annoy or injure."  Id.*, emphasis in original.  Neither the ordinary negligence claim, nor the negligent misrepresentation claim, even *allege* the level of aggravated misconduct required.  Certainly such misconduct cannot be *proven*.

The contract claims (breach of contract and promissory estoppel) cannot support a claim for punitive damages either.  Punitive damages are not recoverable in an action for breach of contract no matter how wilful, malicious or fraudulent the breach. Civ. Code § 3294.  And, "promissory estoppel cannot support punitive damages" either.  *CalFarm Ins. Co. v. Krusiewicz*, 131 Cal.App.4th 273, 277 (2005).  Since there is no evidence of a contractual breach, much less one that was tortious, punitive damages are unavailable on that basis too.  That leaves only plaintiff's fraud claim – a claim that cannot be attributed to *anyone at all* and therefore cannot possibly be blamed on a specific person or persons who can be shown to have acted with malice.

///

///

///

## IV.   CONCLUSION

Express preemption.  Implied preemption.  Causes of action that cannot be proven.  Expert testimony that is at once essential and unavailable.  And two conversations with unknown and unknowable hearsay declarants serving as the linchpin for her case.  All these – and more – stand as irremediable problems for plaintiff.  In their presence, there is an absence of any triable issue in this case.

For these reasons, and for all the reasons set forth above, summary judgment should be entered in favor of United and against plaintiff, with United awarded its costs of suit incurred.

Dated:  November 26, 2014                    Respectfully submitted,

                                             CODDINGTON, HICKS & DANFORTH


                                             /s/ *Richard G. Grotch*

                                         By: _____
                                             Richard G. Grotch
                                             Attorneys for Defendant
                                             United Airlines, Inc.

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
Case No:  2:13-CV-01064-MCE-DAD